# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET WOOD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br><br>THE CITY OF SAN DIEGO; and DOES 1 through 20, inclusive,<br><br>Defendants. | CASE NO. 03cv1910-MMA(POR)<br><br><br><br>**ORDER RE: DEFENDANT CITY OF SAN DIEGO'S MOTION TO DISMISS PLAINTIFF JANET WOOD'S FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>[Doc. No. 121] |

This discrimination class action is before the Court on Defendant City of San Diego's motion to dismiss Plaintiff Janet Wood's First Amended Class Action Complaint ("FAC") [Doc. No. 121]. The FAC alleges three causes of action against the City arising out of the San Diego City Employees' Retirement System ("SDCERS") and its provision for a surviving spouse continuing benefit ("SSCB") that allegedly discriminates against female employees. Specifically, the FAC claims: (1) violation of 42 U.S.C. § 2002e-2 based on the SSCB's disparate impact upon, and disparate treatment of, a class of female City employees; (2) marital status discrimination in violation of California Government Code Section 12940(a); and (3) sex discrimination in violation of California Government Code Section 12940(a). The City argues that the FAC should be dismissed in its entirety because Wood's disparate impact claim fails as a matter of law, and she fails

to state a plausible disparate treatment claim. The City further argues that the Court should choose not to exercise continuing supplemental jurisdiction over Plaintiff's state claims and should dismiss these claims without prejudice.

**BACKGROUND**[1]

Employees of the City of San Diego receive a variety of employment-related benefits. Among these benefits is a defined benefit retirement plan administered by the San Diego City Employee Retirement System ("SDCERS") and governed by San Diego Municipal Code Sections 24.0100, *et seq*. The amount of an employee's retirement benefit is calculated based on the retiree's highest one year compensation, the number of years in service, and other factors. Upon retirement, retirees have several options from which they must choose with respect to the payment of retirement benefits after death. One of the options is the Surviving Spouse Continuance Benefit ("SSCB") (also known as the Maximum Benefit), codified in San Diego Municipal Code section 24.0601, the component of SDCERS challenged in this case.

The City adopted section 24.0601 in 1971. It provides that married and unmarried retirees may choose the Surviving Spouse Continuance Benefit ("SSCB"). The SSCB has different consequences depending on the retiree's marital status at the time of retirement. If the retiree is married and he or she pre-deceases his or her spouse, then the spouse receives monthly payments of 50% of the employee's retirement benefit. The SSCB was amended in 1979 to provide single retirees a refund of their survivor contributions. If the retiree is not married at the time of retirement, he or she receives, in addition to his or her monthly retirement allowance, a return of his or her payroll contributions to fund the SSCB plus interest. The retiring unmarried employees can choose to receive this return either in a lump sum at the time of retirement or as an additional annuity benefit.

On September 24, 2003, Wood, on behalf of herself and others similarly situated, filed this action against the City alleging violations of Title VII and FEHA. Wood alleges that if a SDCERS member is unmarried at the time of retirement, that member obtains a much lower actuarial dollar

---

[1] The procedural and factual background of this matter is detailed in the Court's previous orders and shall not be repeated at length herein. *See*, *e.g.*, Order of April 30, 2009, Doc. No. 80.

value than married members due to the SSCB option. Wood further alleges that because the overwhelming majority of unmarried members are women, the SSCB option disparately impacts the City's female retirees. Wood's First Amended Complaint ("FAC") also alleges a disparate treatment claim, asserting that the City created and implemented the SSCB option with the intent to discriminate. The City denies these allegations. The City argues that Wood's disparate impact theory fails as a matter of law based on the fact that the challenged system, SDCERS, is a bona fide seniority system. According to the City, Wood's disparate treatment theory also fails because the FAC is devoid of facts sufficient to show the City acted with discriminatory intent when adopting the SSCB option. Because the City does not challenge the adequacy of Wood's state law claims, and Wood successfully alleges violations of California laws against marital status discrimination and sex discrimination, the following discussion shall focus solely on her federal discrimination claim.

## LEGAL STANDARD

A party may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In considering a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1975), overruled on other grounds by *Davis v. Scherer*, 468 U.S. 183 (1984); *Cruz v. Beto*, 405 U.S. 319, 322 (1972). Assertions that are mere "legal conclusions," however, are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a plaintiff needs to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Dismissal is appropriate where the plaintiff fails to state a claim supportable by a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

## DISCUSSION

Title VII prohibits an employer from terminating an individual's employment "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *Griggs v. Duke Power Co.*, 401 U.S. 424, 426 (1971). Title VII prohibits two types of employment discrimination. First, it prohibits disparate treatment: intentional, unfavorable treatment of

1  employees based on impermissible criteria. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792
2  (1973); *see also Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *International*
3  *Brotherhood of Teamsters v. U.S.*, 431 U.S. 324 (1977). Second, it prohibits practices with a
4  discriminatory impact: facially neutral practices that have a discriminatory impact and are not
5  justified by business necessity. *Griggs*, 401 U.S. 424; *see also Teamsters*, 431 U.S. 324. The same
6  set of facts may give rise to a claim under both disparate impact and disparate treatment theories.
7  *Teamsters*, 431 U.S. at 335 n.15; *Bonilla v. Oakland Scavenger Company*, 697 F.2d 1297 (9th Cir.
8  1982).

9        Wood alleges in her FAC that the SSCB option contained within SDCERS is prohibited
10 under both theories of discrimination. As noted above, the City moves to dismiss Wood's claims,
11 arguing that as a matter of law her discriminatory impact claim fails because SDCERS is a bona fide
12 seniority system and therefore immune from Title VII liability. With respect to Wood's recently
13 added disparate treatment claim, the City asserts that she fails to plead the necessary element of
14 intent to discriminate and therefore the claim fails.

15       *1.    Procedural Argument*

16       As a threshold matter, Wood asserts that the City's motion is governed by the Court's order
17 granting her leave to amend her complaint in the manner now challenged by the City. Wood argues
18 that the standard of review for granting leave to amend is the same standard used when ruling on a
19 motion to dismiss, and because the Court determined previously that her amendments were not
20 futile, and therefore would likely survive a motion to dismiss, the City's motion is an improper
21 motion for reconsideration disguised as a motion to dismiss.

22       While some courts liken the futility inquiry with that of a motion to dismiss, *see Ritzer v.*
23 *Gerovicap Pharm. Corp.*, 162 F.R.D. 642, 645 (D. Nev. 1995) ("[L]eave to amend need not be
24 granted if the proposed amended complaint would be subject to dismissal."), most recognize that
25 "[d]enial of leave to amend on [futility] ground[s] is rare." *Netbula v. Distinct Corp.*, 212 F.R.D.
26 534, 539 (N.D. Cal. 2003); *see also Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096,
27 1105 (9th Cir. 1999) ("Because this litigation is still in its early stages, leave should be liberally
28 granted unless amendment would be futile."). "Ordinarily, courts will defer consideration of

challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Netbula*, 212 F.R.D. at 539.

Absent a clear indication that Wood had no viable theory of recovery, the Court was not prepared to deem Wood's proposed amendments to her complaint futile when ruling on her motion for leave to amend. In so finding, the Court was not making an express determination of whether Wood's new allegations were necessarily pled in a manner sufficient to withstand a motion to dismiss. Rather, the Court acknowledged in granting leave to amend that it simply appeared feasible that Wood could prove some set of facts concerning her new theory of discrimination and newly added California claims such that allowing Wood to litigate the claims on their merits would not be an exercise in futility. *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."). As such, the City is correct when it argues that the Court did not consider the substantive arguments raised by way of this motion. The issues before the Court are substantive attacks on the FAC, properly brought before the Court by way of a 12(b)(6) motion. Thus, Wood's procedural argument is not persuasive and the Court declines to deny the City's motion on this ground.

*2.     Disparate Impact Claim*

The City argues that Wood's disparate impact claim fails as a matter of law and therefore should be dismissed without leave to amend. Title VII specifically provides that "it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona-fide seniority system…provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(h). Courts have consistently interpreted this provision to permit bona fide, facially neutral seniority systems, even if they result in an adverse impact on minorities. *See Williams v. Mead Coated Bd., Inc.*, 836 F. Supp. 1552, 1567 (M.D. Ala. 1993), aff'd, 41 F.3d 668 (11th Cir. 1994). Thus, where a bona fide seniority system is in effect, even statistical evidence of a disparate impact on minorities will not be sufficient to show a violation of Title VII, unless there is evidence of discriminatory purpose. *See Trans World Airlines*

*v. Hardison*, 432 U.S. 63, 82 (1977) ("absent a discriminatory purpose, the operation of a seniority system cannot be an unlawful employment practice even if the system has some discriminatory consequences").

The determination that an employer has in place a seniority system is a ruling on a question of law. *Underwood v. Hunter*, 730 F.2d 614, 617n. 6 (11th Cir. 1984), *aff'd*, 471 U.S. 222 (1985). The key to a "seniority" rule is that it is based on length of employment rather than subjective criteria. *California Brewers Ass'n v. Bryant*, 444 U.S. 598, 609-10 (1980). A seniority system, either "alone or in tandem with non-'seniority' criteria, allots to employees ever improving employment rights and benefits as their relative lengths of pertinent employment increase." *California Brewers*, 444 U.S. at 606-07.

The City argues that SDCERS is a bona fide seniority system, which is permitted as a matter of law under 42 U.S.C. § 2000e-2(h). The City further asserts that the SSCB is merely a component of the system and therefore not subject to Wood's individual challenge. According to the City, Wood must allege facts sufficient to show that the system itself is not bona fide, not merely a particular benefit within the system, in order to survive this motion to dismiss and state a plausible claim for discrimination based on a disparate impact theory. In support of this claim, the City points to *California Brewers*, wherein the Supreme Court stated that "by legislating with respect to 'systems' of seniority in § 703(h), Congress in 1964 quite evidently intended to exempt from the normal operation of Title VII more than simply those components of any particular seniority scheme that, viewed in isolation, embody or effectuate the principle that length of employment will be rewarded." *California Brewers*, 444 at 606.

In response, Wood points out that a component of a system that relies on something unrelated to seniority is not necessarily permissible merely because the system itself could be considered a bona fide seniority system. *Id.* at 608-09. Wood also cites to the *California Brewers* case in support of her position. In that case, the Supreme Court looked separately at a 45-week requirement, a component of a bona fide seniority system, and determined that it too was based on seniority and did not violate Title VII. *Id*. The court held that if the "non-seniority" aspect of a component is not an "ancillary" rule which is necessary for the seniority system to "work at all," it

may be looked at apart from the system as a whole. *Id.* at 606-07. For example, in *United States v. City of Cincinnati* the circuit court determined that a police department's system for lay-offs was a seniority system, but that its tie breaker policy, based on employee test scores, was not a seniority system. The court found the tie-breaker was "not an 'ancillary' rule which was necessary for the seniority system 'to work at all,' nor did it embody the time-related 'core concept' of seniority. Rather, it was an appendage to the seniority system which, while not affecting the validity of the basic last-hired, first-fired rule, was not itself an integral part of the system." *United States v. City of Cincinnati*, 771 F.2d 161, 168 (6th Cir. 1985) (internal citations omitted).

Here, in determining whether the SSCB component of SDCERS should be looked at apart from the system as a whole, the Court first must decide whether the SSCB is essential for SDCERS to "work at all" and whether it is an integral part of the system. To answer this question at the pleadings stage, the Court must rely on Wood's FAC, taking all allegations as true. In addition, however, the Court may take judicial notice of documents outside the pleadings if appropriate to do so. Wood requests the Court take judicial notice of sections of the San Diego Municipal Code relevant to these proceedings. (*See Plaintiff's Request for Judicial Notice*, Doc. No. 122-3, Exs. 1-5.) The City requests judicial notice of pertinent code sections as well. (*See Defendant's Request for Judicial Notice*, Doc. No. 121-4, Request No. 1.) The City also requests judicial notice of the pleadings, papers, and proceedings to date in this action, as well as the pleadings, papers, and proceedings in *Connie M. Jamison, et al. v. City of San Diego*, Civil Case No. 02cv1825. (*Id.*, Request Nos. 2 and 3.) Finally, the City requests judicial notice be taken regarding the City's responsibility for creating certain social conditions. (*Id.*, Request No. 4.) Wood opposes this last request.

A court must take judicial notice if a party requests it and supplies the court with the requisite information. Fed. R. Evid. 201(d). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This Court may take judicial notice of facts outside the pleadings without converting the motion to one for summary judgment. *See Mack v.*

1 *South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986) (citing *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956)).  The Court finds that the San Diego Municipal Code sections may be judicially noticed, and therefore grants both parties' request.  The Court also grants the City's request regarding the pleadings, papers, and proceedings in this case and the Jamison case.  *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir.1980) ("In particular, a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases.").  The Court denies the City's fourth request, concerning its lack of responsibility for the creation of certain social conditions, pursuant to Rule 201(b)(2).

San Diego Municipal Code Section 24.0100 states in pertinent part:

> The purpose of this article is to recognize a public obligation to City employees for their long service in public employment by making provision for retirement compensation and death benefits as additional elements of compensation for future services. . .

(*See Plaintiff's RJN*, Ex. 1.)  Under the Supreme Court's test in *California Brewers*, 444 U.S. 598 at 606, the key to deciding whether a decision making process qualifies as a seniority system is its reliance on relative lengths of employment.  That is how SDCERS functions, as is made plain on the face of the implementing municipal code sections.  However, as noted above, Wood asserts that she does not challenge SDCERS as a whole.  Rather, she alleges that the SSCB component of SDCERS is not a seniority system because it differentiates benefits solely on the basis of marital status, resulting in a discriminatory impact on women.

After reviewing the pertinent municipal code sections, the Court finds that the SSCB is not a seniority system.  Section 24.0601 sets out the SSCB component of the City's retirement system.  It provides that when a retired City employee dies, the retirement system will pay the employee's surviving spouse 50% of the employee's monthly retirement allowance.  *See* Section 24.0601(c).  The SSCB goes on to provide that if an employee does not have a spouse at the time of retirement, the system will pay the employee a lump sum based on the employee's contributions to the fund, or consider the contributions as voluntarily made to a larger annuity benefit.  *See* Section 24.0601(e).  Either way, this component of the system is not based on longevity of service.  The options and resulting benefit are based on marital status at the time of retirement, regardless of how long an

1 employee has been serving the City prior to taking retirement. The SSCB is not an integral part of
2 the system and is not required for SDCERS to "work at all." *United States v. City of Cincinnati*, 771
3 F.2d 161 at 168. The question before the Court on a motion dismiss is whether Wood has alleged
4 enough facts to state a disparate impact claim that is plausible on its face. Wood's allegations in the
5 FAC regarding the SSCB and the manner in which it operates and is implemented, are sufficient to
6 state a plausible claim for discrimination based on a disparate impact theory. Accordingly, with
7 respect to Wood's disparate impact claim, the Court denies the City's motion to dismiss.[2]

       *3.  Disparate Treatment Claim*

9 The City also moves to dismiss Wood's disparate treatment allegations. The key issue for
10 her disparate treatment theory is whether Wood alleges sufficiently plausible facts in her FAC to
11 show the City adopted the SSCB with discriminatory intent. Wood argues that she does.

12 A plaintiff alleging disparate treatment must allege facts showing intentional discrimination.
13 She must show that the employer intentionally treats some people less favorably than others because
14 of their race, color, religion, sex, or national origin. *International Bhd of Teamsters v. United States*,
15 431 U.S. 324, 335 n.15 (1977). Where a plaintiff challenges a defendant's policy, the plaintiff must
16 establish that the defendant implemented the policy "because of, not merely in spite of," its adverse
17 effects on the protected group. *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279
18 (1979). The fact that an employer was aware of, or totally indifferent to the discriminatory impact
19 of, its policy is not sufficient to state a claim for relief. *American Federation of State, etc. v.
20 Washington*, 770 F.2d 1401, 1405 (9th Cir. Wash. 1985)( "It is insufficient for a plaintiff alleging
21 discrimination under the disparate treatment theory to show [that] the employer was merely aware of
22 the adverse consequences the policy would have on a protected group.") If the intent requirement is
23 to have meaning in a statistics-based case, the FAC must allege more than that the City could or
24 should have known that its actions had a disparate impact on females. Wood cannot rely on her
25 disparate impact allegations alone to support her disparate treatment allegation. In order to state a
26 claim for disparate treatment, Wood must provide more than mere conclusory allegations of the

---

28     [2] Because Wood's federal claim shall proceed on this theory of discrimination, the Court shall continue to exercise supplemental jurisdiction over Wood's state law claims.

City's intent to discriminate. *Bell Atlantic*, 127 S. Ct. at 1964-65. Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

Here, Wood sets forth the following additional factual allegations regarding intent to discriminate. In paragraph 33 of the FAC, Wood asserts: "The SSCB discriminates against women intentionally, within the meaning of Title VII, because it was adopted in 1971 with knowledge of its discriminatory effects." Paragraph 34 of the FAC states: "The adverse impacts and disparate treatment are significant, typically reducing the adversely affected member's retirement allowance – a privilege of employment – by more than $15,000." In her opposition brief, Wood also points to paragraph 10 of the FAC in which she alleges that the SSCB, as originally enacted in 1971 via an ordinance amending SDCERS, is facially discriminatory because it bases the amount of survivor contributions on membership classification and gender. Specifically, the ordinance provided for males to contribute at a significantly higher rate than females based on actuarial tables premised on the assumption that females live longer than males. As a result, the ordinance differentiated based in part on gender in favor of female employees.

The City first argues that as soon as the Supreme Court decided the case of *City of Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702 (1978), the City eliminated the gender-based contribution differentials noted in paragraph 10 of the FAC. In *Manhart*, the Department of Water and Power knowingly and intentionally administered a retirement, disability, and death benefit program that required its female employees to make larger contributions to the pension fund than its male employees. 435 U.S. at 704. The decision to adopt an employment practice that treated men differently from women was carefully calculated, "based on a study of mortality tables and [the Department's] own experience." *Id.* at 705. Despite the valid generalization that women, as a class, live longer than men, the court found that an unequal contribution requirement violated Title VII. *Id.* at 707-08. Because the City changed its contribution policies in the wake of *Manhart*, the SSCB has remained facially neutral with respect to gender. Therefore the City argues that Wood must allege facts sufficient to show the SSCB was adopted with discriminatory intent, which she does not.

Wood fails to allege any facts establishing that the City *deliberately* adopted an employment

1  practice or program in order to discriminate based on gender. Allegations of knowledge or
2  awareness of the SSCB's discriminatory impact are not sufficient to state a claim for disparate
3  treatment. As the Supreme Court made clear in *Manhart*, the City must have implemented the
4  SSCB as it existed in 1971 *because it discriminated against female employees based on gender*.
5  Wood does not plead this fact, nor can she, because the SSCB at the time of its adoption
6  discriminated against male employees – not females. As the Supreme Court noted over a decade
7  after its decision in *Manhart*, "a disparate treatment claim cannot succeed unless the employee's
8  protected trait actually played a role in that process and had a determinative influence on the
9  outcome." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). Wood does not allege that
10 gender played a role in the process and adoption of the SSCB. She merely alleges that until 1979
11 the contribution amounts were based in part on gender, with the City's knowledge. As a result, she
12 fails to state a plausible claim for discrimination based upon disparate treatment. The Court grants
13 the City's motion in part and dismisses Wood's disparate treatment claim.

   *4.  Leave to Amend*

15 Wood requests leave to amend her FAC. At this stage in the litigation, the Court finds that
16 the Rule 15(a) factors weigh against granting her request. A district court may deny leave to amend
17 based on "the presence of any of four factors: bad faith, undue delay, prejudice to the opposing
18 party, and/or futility." *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). Almost
19 seven years after she filed this case, the Court granted Wood leave to amend her complaint in order
20 to give her the opportunity to state a plausible claim for disparate treatment. Wood took that
21 opportunity, but failed to do so. Any attempt to amend her claim will be futile. Wood cannot in
22 good faith state any facts to show the City adopted the SSCB with discriminatory intent against
23 *female* employees, or that the SSCB at the time of its adoption was discriminatory against females
24 on its face. As such, the dismissal of Wood's disparate treatment claim is with prejudice and
25 without leave to amend.
26 / / /
27 / / /
28 / / /

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant City of San Diego's Motion to Dismiss Plaintiff's First Amended Complaint.

**IT IS SO ORDERED**.

DATED: June 10, 2010

*[signature]*

Hon. Michael M. Anello
United States District Judge